## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **RAYMOND WILLIAMSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION  15-0430-WS-B** |
| | ) |
| **CITY OF FOLEY, ALABAMA, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## ORDER

This matter is before the Court on the plaintiff's motion for preliminary injunction.  (Doc. 7).  The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 7-8, 20-21, 23), and the motion is ripe for resolution.  After careful consideration, the Court concludes the motion is due to be granted.

## BACKGROUND

According to the verified complaint, (Doc. 1), the plaintiff is a Baptist pastor in Baldwin County who periodically leads members of his congregation in evangelistic street ministry.  Since 2006, he and parishioners have engaged in such activity inside the corporate limits of the defendant City of Foley ("the City"), specifically at the intersection of Highways 59 and 98.  The group's members spread out on the public sidewalks at the four corners of the intersection and, for a period of one hour, preach and witness both orally and with signs.  Until 2014, this occurred repeatedly and without incident.

In March 2014, the City adopted an ordinance ("the Ordinance"), which requires that persons wishing to engage in speech on public property obtain a permit prior to doing so.  The failure to comply with the Ordinance is punishable

by fine and imprisonment.  Defendant David Wilson, in his capacity as Chief of Police, is charged by the Ordinance with ruling on applications for issuance of a permit.

The City has twice applied the Ordinance to the plaintiff.  On the first occasion, the group disbanded rather than face arrest.  On the second occasion, in August 2014, the plaintiff was issued a citation for violating the Ordinance.  Defendant Otis Miller is a police lieutenant who was involved in both incidents.

The plaintiff would like to continue his street preaching as before.  But for his fear of arrest and criminal citation, he would return to the City and engage in these expressive activities.

The complaint alleges that the Ordinance violates the plaintiff's First Amendment rights of free speech as well as the Due Process Clause.  The plaintiff asks the Court to declare the Ordinance unconstitutional on its face and as applied to his desired speech and to award nominal damages, attorney's fees, costs and expenses.  (Doc. 1 at 22-23).  By motion, the plaintiff asks the Court to enjoin the City, the individual defendants and certain others "from applying [the Ordinance] to impose a permit requirement on [the plaintiff's] small group religious expression on public sidewalks in [the City]."  (Doc. 7 at 1).

## DISCUSSION

"A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites."  *American Civil Liberties Union of Florida, Inc. v. Miami-Dade County School Board*, 557 F.3d 1177, 1198 (11th Cir. 2009) (internal quotes omitted).  "A district court may grant [preliminary] injunctive relief only if the moving party shows that:  (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would

not be adverse to the public interest." *Id.* (internal quotes omitted). "Failure to show any of the four factors is fatal, and the most common failure is not showing a substantial likelihood of success on the merits." *Id.* The parties focus on the likelihood vel non of the plaintiff's success.

Neither side has requested a hearing. "An evidentiary hearing is required for entry of a preliminary injunction only where facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue." *Cumulus Media, Inc. v. Clear Channel Communications, Inc.*, 304 F.3d 1167, 1178 (11th Cir. 2002) (internal quotes omitted). That circumstance being absent here, and the parties not desirous of a hearing, none will be held.

The defendants agree with the plaintiff that his religious speech is protected by the First Amendment and that the public sidewalks on which he engages in this activity are a traditional public forum from which speech may not be completely excluded. (Doc. 21 at 9). The plaintiff identifies a multitude of respects in which, he says, the Ordinance impermissibly restricts his ability to engage in protected speech in such a forum. Because one of his asserted grounds plainly supports the requested injunctive relief, the Court confines its analysis to that ground. The parties should not assume from the Court's silence that it has any particular opinion regarding the strength vel non of any of the grounds for injunctive relief not addressed herein.

"A prior restraint on expression exists when the government can deny access to a forum for expression before the expression occurs." *United States v. Frandsen*, 212 F.3d 1231, 1236-37 (11th Cir. 2002). "Because the [official] can deny the use of the [forum] for expression by denying a permit, [the regulation] is a prior restraint on expression." *Id.* at 1237; *accord Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130 (1992) ("The Forsyth County ordinance requiring a permit and a fee before authorizing public speaking … in the archetype of a traditional public forum … is a prior restraint on speech ….") (internal quotes

omitted).  "[T]here is a heavy presumption against the validity of a prior restraint …."  *Id.* (internal quotes omitted).

In order to be constitutionally acceptable, a permit requirement "may not delegate overly broad licensing discretion to a government official."  *Forsyth County*, 505 U.S. at 130.  "Further, any permit scheme controlling the time, place, and manner of speech must not be based on the content of the message, must be narrowly tailored to serve a significant governmental interest, and must leave open ample alternatives for communication."  *Id.*

"Where the licensing official enjoys unduly broad discretion in determining whether to grant or deny a permit, there is a risk that he will favor or disfavor speech based on its content."  *Thomas v. Chicago Park District*, 534 U.S. 316, 323 (2002).  Such a possibility is "inherently inconsistent with a valid time, place, and manner regulation."  *Forsyth County*, 505 U.S. at 130 (internal quotes omitted). The Ordinance introduces exactly this risk – not merely by failing to establish a standard that rules out the consideration of content, but by establishing a standard that affirmatively authorizes the chief of police to consider the content of the proposed speech and to deny a permit based on the conclusions he draws regarding that content.

> The police chief shall issue a parade/demonstration permit when, from a consideration of the application and from such other information as may otherwise be obtained, he or she finds that … [t]he conduct of the parade/demonstration is not reasonably likely to … provoke disorderly conduct.

(Doc. 7-4, § 11-99(6)).

This provision appears clearly to mean that, while the chief of police must issue a permit if he finds (inter alia) no reasonable likelihood of resultant disorderly conduct, he is free to deny a permit if he finds such a likelihood, and he may find such a likelihood based on the response of others to the proposed speech. The defendants say "the plain English focuses on the conduct of the demonstration," (Doc. 21 at 15), but they do not explain the significance of this

lonely sentence.  Certainly the Ordinance identifies the conduct of the demonstration as that which may trigger disorderly conduct, but it plainly does not limit the persons whose disorderly conduct may be considered to those participating in the demonstration.  On the contrary, the Ordinance speaks in terms of demonstrations that "provoke" disorderly conduct, and the common usage of that term envisions someone or something provoking a reaction in another, not in himself or itself.[1]

"Speech cannot be … banned, simply because it might offend a hostile mob."  *Forsyth County*, 505 U.S. at 134-35.  But that is precisely what the Ordinance approves – denial of a permit due to its potential for causing third parties to become unruly.  Such a regime does not merely imbue the official with excessive discretion (though that would be enough to invalidate the regulation), it also renders the regulation itself content-based.  "Listeners' reaction to speech is not a content-neutral basis for regulation," *id*. at 134, and "[r]egulations which permit the Government to discriminate on the basis of the content of the message cannot be tolerated under the First Amendment."  *Id*. at 135 (internal quotes omitted).

Thus, in *Forsyth County*, the Court held unconstitutional an ordinance "that permits a government administrator to vary the fee for assembling or parading to

---

[1] A respected dictionary offers several examples of provocation, all of which involve being provoked by another person or circumstance:  "taunts that provoked their rivals"; "a remark that provoked me to reconsider"; "a miscue that provoked laughter"; "news that provoked an uproar"; and "provoke a fight."  American Heritage Dictionary 1419 (5th ed. 2011).

To the uncertain extent the defendants mean to suggest that "conduct" is to be distinguished from "speech," the Ordinance will not bear such a construction.  The Ordinance repeatedly speaks of a parade or demonstration as being "conducted."  (Doc. 7-4, §§ 11-98(2)b, -98(2)d, -99 (final paragraph), -107, -108, -109(1)).  Indeed, the Ordinance describes all First Amendment activity – be it "march, … protest, demonstration, rally, picketing [or] assembly" – as "conduct."  (*Id*., § 11-95).  The "conduct of" a parade or demonstration under the Ordinance thus plainly encompasses the speech employed by the participants.

reflect the estimated cost of maintaining public order." 505 U.S. at 124, 137. Such a provision improperly "ties the amount of the fee to the content of the speech and lacks adequate procedural safeguards." *Id*. Estimating the cost of maintaining public order necessarily requires an examination of the content of the message being conveyed and the response of others to that speech, such that "[t]he fee assessed will depend on the administrator's measure of the amount of hostility likely to be created by the speech based on its content." *Id*. at 134. This is precisely the situation presented in this action, save only that the speaker here risks being completely denied of the right to speak while the speaker in *Forsyth County* risked "only" paying more dearly for the privilege.

The defendants trumpet *Bethel v. City of Montgomery*, 2010 WL 996397 (M.D. Ala. 2010), as a case that upheld a "virtually identical" set of standards for issuance of a permit. (Doc. 21 at 14). And so it did, but without any discussion of the legal test addressed above. 2010 WL 996397 at *12. Much more instructive is *Beckerman v. City of Tupelo*, 664 F.2d 502 (5th Cir. 1981), in which the Court addressed the constitutionality of an ordinance that "authorize[d] the Chief of Police to deny a permit if he finds that the conduct of the parade will probably cause injury to persons or property or provoke disorderly conduct or create a disturbance." *Id*. at 507.

According to the Fifth Circuit, "[t]his provision [specifically, the "provoke disorderly conduct" language] fails as an impermissible prior restraint upon free speech because it is not narrowly drawn to relate to health, safety, and welfare interests, but instead it sanctions the denial of a permit on the basis of the so-called 'hecklers' veto.'" 664 F.2d at 509. "A state may not keep law and order by depriving citizens of their rights," and the defendant "may not deny a parade permit simply because of the fear of adverse reaction to the marchers by others." *Id*. at 510. In short, "[t]he provision … clearly trenches upon First Amendment rights." *Id*. *Beckerman* appears perfectly consonant with the Supreme Court's subsequent opinion in *Forsyth County*, and the defendants offer no reason the

6

Court should or even could depart from thoughtful persuasive authority[2] finding unconstitutional the identical provision at issue here.

Nor can the Court ignore *Hague v. Committee for Industrial Organization*, 307 U.S. 496 (1939), in which the Supreme Court considered an ordinance that required a permit for any parade or public assembly and that authorized the director of public safety to deny a permit only "for the purpose of preventing riots, disturbances or disorderly assemblage." *Id*. at 502 n.1. This provision rendered the ordinance "void upon its face," because it "can thus … be made the instrument of arbitrary suppression of free expression of views on national affairs[,] for the prohibition of all speaking will undoubtedly 'prevent' such eventualities." *Id*. at 516.

The defendants insist that, regardless of what the Ordinance provides, "the Police Chief has stated his focus is on the demonstration, not the response." (Doc. 21 at 15). Assuming without deciding that such a statement would be relevant (or, as the defendants suggest, controlling),[3] Chief Wilson has made no such statement. The affidavit on which the defendants rely does not address this provision but only a separate provision (with very different language) regarding the setting of a fee for issuance of the permit. (Doc. 20-4 at 4).

Without specifically addressing the provision authorizing the chief of police to deny a permit based on a likelihood the event will provoke disorderly conduct, the defendants argue generally that the plaintiff lacks standing because he "has failed to show the required injury in fact as to each provision it [sic] challenges." (Doc. 21 at 8). The very case on which they rely stands for the

---

[2] Because *Beckerman* was released shortly after the circuit split, it is not binding authority in the Eleventh Circuit but only persuasive. *Stein v. Reynolds Securities, Inc*., 667 F.2d 33, 34 (11th Cir. 1981).

[3] *See generally Forsyth County*, 505 U.S. at 131 ("In evaluating respondent's facial challenge, we must consider the county's authoritative constructions of the ordinance, including its own implementation and interpretation of it.").

proposition that a plaintiff has standing to challenge a provision of a permit ordinance investing an official with unbridled discretion if he is subject to the provision or soon will be. *CAMP Legal Defense Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1274 (11th Cir. 2006). Because the chief of police is required by the Ordinance to consider the reaction of third parties to the speaker's proposed speech, the plaintiff's "future applications would be subject to these procedural regulations," conferring standing to challenge that provision. *Id*.

In short, the plaintiff has shown a substantial likelihood of success on the merits. As for the second element for injunctive relief, "it is well established that the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.*" KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1271-72 (11th Cir. 2006) (internal quotes omitted). As for the third, "the city has no legitimate interest in enforcing an unconstitutional ordinance," *id*. at 1272, so the threatened injury to the plaintiff outweighs any damage to the defendants. As for the fourth requirement, "[t]he public has no interest in enforcing an unconstitutional ordinance." *Id*. The defendants do not seriously question these propositions. (Doc. 21 at 25-26).

## CONCLUSION

For the reasons set forth above, the plaintiff's motion for preliminary injunction is **granted**. The defendants, their agents, servants, employees, attorneys, and all persons and entities in active concert or participation with them, directly or indirectly, are hereby **enjoined**, until such time as the Court enters a ruling on the merits of this action, from applying the Ordinance to impose a permit requirement on the plaintiff or those with him as a condition of their religious expression on the City's public sidewalks.[4]

---

[4] Rule 65(c) provides for the giving of security upon the issuance of a preliminary injunction. However, "it is well-established that the amount of security required by the rule is a matter within the discretion of the trial court …[, and] the court may elect to

DONE and ORDERED this 18th day of November, 2015.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

require no security at all." *BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Services, LLC*, 425 F.3d 964, 971 (11th Cir. 2005) (internal quotes omitted). The defendants, despite full opportunity to do, did not request imposition of a security requirement, and the Court will not intercede on their behalf.  Accordingly, no security will be required.