IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RAYMOND WILLIAMSON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION  15-0430-WS-B |
| | ) |
| CITY OF FOLEY, ALABAMA, et al., | ) |
| | ) |
|     Defendants. | ) |

**ORDER**

This matter is before the Court on the plaintiff's motion for summary judgment.  (Doc. 31).  The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 31-33, 40-41, 46), and the motion is ripe for resolution.  After careful consideration, the Court concludes the motion is due to be denied.

**BACKGROUND**

According to the verified complaint, (Doc. 1), the plaintiff is a Baptist pastor in Baldwin County who periodically leads members of his congregation in evangelistic street ministry.  Since 2006, he and parishioners have engaged in such activity inside the corporate limits of the defendant City of Foley ("the City"), specifically at the intersection of Highways 59 and 98.  The group's members spread out on the public sidewalks at the four corners of the intersection and, for a period of one hour, preach and witness both orally and with signs.  Until 2014, this occurred repeatedly and without incident.

In March 2014, the City adopted an ordinance ("the First Ordinance"), which requires that persons wishing to engage in speech on public property obtain a permit prior to doing so.  The failure to comply with the First Ordinance is

punishable by fine and imprisonment.  Defendant David Wilson, in his capacity as Chief of Police, is charged by the First Ordinance with ruling on applications for issuance of a permit.

The City has twice applied the First Ordinance to the plaintiff.  On the first occasion, the group disbanded rather than face arrest.  On the second occasion, in August 2014, the plaintiff was issued a citation for violating the First Ordinance.  Defendant Otis Miller is a police lieutenant who was involved in both incidents.

The plaintiff would like to continue his street preaching as before.  But for his fear of arrest and criminal citation, he would return to the City and engage in these expressive activities.

The complaint alleges that the First Ordinance violates the plaintiff's First Amendment rights of free speech as well as the Due Process Clause.  The plaintiff asks the Court to declare the First Ordinance unconstitutional on its face and as applied to his desired speech, enjoin its enforcement, and award nominal damages, attorney's fees, costs and expenses.  (Doc. 1 at 22-23).

By previous order, the Court granted the plaintiff's motion for preliminary injunction.  Although the plaintiff raised a number of grounds, the Court addressed only one, ruling that the plaintiff had shown a substantial likelihood of success on his claim that the First Ordinance unconstitutionally authorized Chief Wilson to deny a permit based on the content of the proposed speech, in particular, the reactions of third parties to such speech.  (Doc. 24).  The defendants have been enjoined since November 2015 from applying the First Ordinance to impose a permit requirement on the plaintiff or those with him as a condition of their religious expression on the City's public sidewalks.  (*Id*. at 8).

On motion for summary judgment, the plaintiff seeks a declaration that the First Ordinance is unconstitutional, on its face and as applied to the plaintiff; a permanent injunction preventing the defendants from applying the First Ordinance to the plaintiff; and nominal damages of $1.00 for the historical violation of his constitutional rights.  (Doc. 31 at 1-2).

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); *accord Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick*, 2 F.3d at 1116; *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving

3

party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

There is no burden on the Court to identify unreferenced evidence supporting a party's position.[1]  Accordingly, the Court limits its review to the exhibits, and to the specific portions of the exhibits, to which the parties have expressly cited.  Likewise, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment," *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995), and the Court accordingly limits its review to those arguments the parties have expressly advanced.

**I. Mootness.**

The plaintiff brought suit under the First Ordinance.  In March 2016, four months after the Court enjoined enforcement of the permit requirement of the First

---

[1] Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *accord Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so.").  "[A]ppellate judges are not like pigs, hunting for truffles buried in briefs," and "[l]ikewise, district court judges are not required to ferret out delectable facts buried in a massive record …." *Chavez v. Secretary, Florida Department of Corrections*, 647 F.3d 1057, 1061 (11th Cir. 2011) (internal quotes omitted).

4

Ordinance (and almost one month after the plaintiff moved for summary judgment), the City enacted a new ordinance ("the Second Ordinance"). (Doc. 41-1). The Second Ordinance "repealed" the First Ordinance, (*id*. at 6), and created a new regime governing speech in the City's "public rights of way." (*Id*. at 3). The defendants argue that the Second Ordinance "has removed the challenged features of the original ordinance, rendering this case moot." (Doc. 41 at 5).

"[A] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Troiano v. Supervisor of Elections*, 382 F.3d 1276, 1282 (11th Cir. 2004) (internal quotes omitted). If a case is or becomes moot, "dismissal is required because mootness is jurisdictional." *Id*. (internal quotes omitted). "Whether a case is moot is a question of law …." *Id*.

Mootness may occur when the defendant voluntarily ceases the challenged conduct. However, "[a] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Doe v. Wooten*, 747 F.3d 1317, 1322 (11th Cir. 2014) (internal quotes omitted). The defendants here are government actors, but "[t]he Supreme Court has applied this same standard in cases involving government actors." *Id*.

Unlike a private defendant, however, a government actor can raise a "rebuttable presumption that the objectionable behavior will *not* recur." *Troiano*, 382 F.3d at 1283 (emphasis in original).[2] Thus, "a challenge to a government policy that has been unambiguously terminated will be moot in the absence of some reasonable basis to believe that the policy will be reinstated if the suit is terminated." *Id*. at 1285. To obtain the benefit of the rebuttable presumption, the government defendant bears the "initial burden" to show that the offending policy has been unambiguously terminated. *Doe*, 747 F.3d at 1323.

---

[2] *See also Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1184 (11th Cir. 2007) (confirming that "private citizens are not entitled to this legal presumption").

"In general, the repeal of a challenged statute is one of those events that makes it absolutely clear that the allegedly wrongful behavior … could not reasonably be expected to recur." *Harrell v. Florida Bar*, 608 F.3d 1241, 1265 (11th Cir. 2010) (internal quotes omitted). The "repea[l] or amend[ment] [of] a challenged statute or policy [is] often a clear indicator of unambiguous termination." *Doe*, 747 F.3d at 1322. Here, the Second Ordinance on its face repeals and replaces the First Ordinance.

Because the defendants have met their initial burden of showing that the First Ordinance has been unambiguously terminated, the plaintiff's challenge to that ordinance is moot unless there is "some reasonable basis to believe that the policy will be reinstated if the suit is terminated." *Troiano*, 382 F.3d at 1285. "Mere speculation that the [defendant] will return to its previous ways is no substitute for concrete evidence of secret intentions." *National Advertising Co. v. City of Miami*, 402 F.3d 1329, 1334 (11th Cir. 2005). The plaintiff advances no argument that there is reason to believe the City will reinstate the First Ordinance if suit is terminated. Instead, he says, the Second Ordinance carries over most of the asserted evils of the First.

"[W]hen an ordinance is repealed by the enactment of a superseding statute, then the superseding statute or regulation moots a case only to the extent that it removes challenged features of the prior law. To the extent that those features remain in place, and changes in the law have not so fundamentally altered the statutory framework as to render the original controversy a mere abstraction, the case is not moot." *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1310 (11th Cir. 2000) ("*CAMP*") (internal quotes omitted). "The entire case becomes moot only where a superseding statute … satisfies *all* the principles sought in an attack on the prior statute" and "the amendment completely eliminate[s] the harm of which plaintiffs complained." *Naturist Society, Inc. v. Fillyaw*, 958 F.2d 1515, 1520 (11th Cir. 1992) (emphasis in original, internal quotes omitted). The plaintiff, citing *CAMP*, argues the

6

controversy has not been rendered moot under this standard. (Doc. 46 at 7-9). The defendants, invoking the same standard, take a contrary position. (Doc. 40 at 5-10).

As the Court understands the complaint, the plaintiff challenges the First Ordinance in the following respects: (1) the requirement of a permit to speak on a public sidewalk; (2) the extension of this requirement to small groups and even to individuals; (3) vagueness surrounding this extension; (4) the ten-day advance notice required for a permit; (5) the fee required for obtaining a permit; (6) the unbridled discretion vested in Chief Wilson to grant or deny a permit, including based on the content of the proposed speech; and (7) the prohibition of speech at the intersection of Highways 59 and 98. (Doc. 1 at 8, 18-20). On motion for summary judgment, the plaintiff raises each of these challenges except the fifth. (Doc. 32 at 16-25).

The defendants argue that the plaintiff's first four challenges are moot because a permit is no longer required in order to speak on most of the City's sidewalks. (Doc. 40 at 5-6). They further argue that the plaintiff's final challenge is moot because the Second Ordinance permits the plaintiff to speak without a permit at the northeast corner of Highways 59 and 98 at any time and from the other three corners between 5:00 p.m and 8:00 a.m. (*Id*. at 8-10).

Mootness does not arise when a governmental unit has tweaked language but left in place the same basic impediments to speech, so that the new version "disadvantage[s] the plaintiffs in the same fundamental way." *CAMP*, 219 F.3d at 1310 (internal quotes omitted). Instead, to support mootness the changes must have "so fundamentally altered the statutory framework as to render the original controversy a mere abstraction." *Id*. (internal quotes omitted). Thus, for example, Atlanta's new festival ordinance, which eliminated the government's ability to consider the number of potential counter-demonstrators when estimating event attendance and extra police hours in establishing an event fee, "ma[d]e it more difficult for the City to manipulate the fees based on the content of a festival's

message and eliminate[d] a portion of the [plaintiffs'] arguments regarding the constitutionality of the fees; however, they d[id] not satisfy all the [plaintiffs'] challenges against this portion of the ordinance," so that "the gravamen of the [plaintiffs'] complaint remain[ed] unaffected." *Id.* at 1315 n.11.

The Second Ordinance does not so fundamentally alter the First Ordinance as to render the plaintiff's challenges moot, because the Second Ordinance continues to disadvantage him in the same fundamental way. The plaintiff's street ministry centers on the intersection of Highways 59 and 98, where his group utilizes all four corners simultaneously in order to reach passing vehicular traffic effectively. (Doc. 1 at 4-5, 8, 13; Doc. 31-1 at 2). The First Ordinance precluded the plaintiff from speaking within fifty feet of that intersection, and this preclusion applied to all four corners, 24/7. The Second Ordinance continues to preclude the plaintiff from speaking within fifty feet of three corners from 8:00 a.m. to 5:00 p.m. every day. (Doc. 41-1 at 4, § 2.B). Partial preclusion is not as severe as total preclusion, but by restricting the plaintiff's access to this heavily traveled crossroads, the Second Ordinance still disadvantages the plaintiff in the same fundamental way.

It is true that the plaintiff needs no permit to speak at any time from the northeast corner of the intersection, and it is true that he needs no permit to speak at any time more than fifty feet from the other three corners, or at these corners between 5:00 p.m. and 8:00 a.m. But if the plaintiff desires to speak from these three corners during business hours or daylight hours (especially in winter),[3] he must obtain a permit to do so. (Doc. 41-1 at 4, § 2.B; *id.* at 5, § 3). As with the First Ordinance, this is true "regardless of the number of people participating."

---

[3] It is uncontroverted that he has and he does. (Doc. 31-1 at 5; Doc. 46-1 at 2, 5).

8

(*Id.* at 4, § 1.B).[4]  And as with the First Ordinance, a permit must be sought at least ten days before the event.  (*Id*. at 5, § 4).

The Second Ordinance expressly eliminates any fee requirement for issuance of a permit.  (Doc. 41-1 at 5, § 5).  The Second Ordinance thus renders moot the plaintiff's fifth challenge.

As to the plaintiff's sixth challenge, the Second Ordinance requires a permit only when a street closure is sought, and Chief Wilson is required to issue such a permit "if the intended Demonstration does not violate Section 7 of this Ordinance."  (*Id*., § 6).  Section 7 lists four reasons for denying a permit, having to do with the frequency of a street closure, the timing of a street closure (evacuations, emergencies, and proximity to certain holidays), and adjoining landowners' access to their properties.  (*Id*. at 6, § 7).  The plaintiff concedes that the Second Ordinance does not invest Chief Wilson with unbridled discretion to prohibit speech.  (Doc. 46 at 7).

However, the plaintiff notes that Chief Wilson is required to deny a permit if any owner or lessor who would lose vehicular access to his or her property in the event of a street closure fails to consent.  (Doc. 41-1 at 6, § 7.3).  The plaintiff complains that this provision gives third parties veto power over the issuance of a permit, one they could exercise based on the content of the proposed speech.  (Doc. 46-1 at 3).  To this extent, the Second Ordinance carries over the same basic impediment to speech – authorization to deny a permit based on third parties' reaction to the content of the proposed speech.

The defendants cite no authority supporting their position that the Second Ordinance moots the entire controversy, relying instead only on their *ipse dixit*.  In light of the foregoing, the Court cannot accept their position.  As to the plaintiff's first, second, fourth and seventh challenges, and as to the content-based component of the sixth, the controversy is not moot.  Nor is the case moot as to the

---

[4] Because the requirement of a permit regardless of how few people are involved is now explicit, the plaintiff's vagueness challenge is moot.

plaintiff's demand for nominal damages for historical violations of his rights. *KH Outdoor, L.L.C. v. Clay County*, 482 F.3d 1299, 1303 (11th Cir. 2007); *Granite State Outdoor Advertising, Inc., v. City of Clearwater,* 351 F.3d 1112, 1119 (11th Cir. 2003).

## II. Constitutionality of Second Ordinance.

"[T]he Supreme Court has broadly discerned three distinct (although not airtight) categories of government property for First Amendment purposes: traditional public fora, designated public fora, and limited public fora." *Bloedorn v. Grube*, 631 F.3d 1218, 1230 (11th Cir. 2011). Identifying which is at issue is important, because "the degree of scrutiny we place on a government's restraint of speech is largely governed by the kind of forum the government is attempting to regulate." *Id*.

The Supreme Court has defined a "traditional public forum" as a place, "such as a street or a park, which has immemorially been held in trust for the use of the public and, time out of mind, has been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Walker v. Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2250 (2015) (internal quotes omitted). The public sidewalks at issue here unquestionably are traditional public fora. *E.g., Schenck v. Pro-Choice Network*, 519 U.S. 357 (1997) ("[S]peech in public areas is at its most protected on public sidewalks, a prototypical example of a traditional public forum.").

For both traditional and designated public fora, "a time, place, and manner restriction can be placed … only if it is content neutral, narrowly tailored to achieve a significant government interest, and leaves open ample alternative channels of communication." *Bloedorn*, 631 F.3d at 1231 (internal quotes omitted); *accord Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130 (1992). The defendant concedes that this standard applies. (Doc. 21 at 9).

At issue are restrictions on speech at three corners of the intersection of Highways 59 and 98 between the hours of 8:00 a.m. and 5:00 p.m. No speech

may occur at these locations during these hours on any day of the year unless the speaker first obtains a permit.  The only permit that may be issued is one closing Highways 59 and 98 to vehicular traffic for the duration of the speech.  It is uncontroverted that vehicular traffic constitutes 80% of all traffic at this intersection.  (Doc. 46-1 at 3).  Thus, the only way to gain permission to speak is to forfeit four-fifths of the speaker's audience – which, as the plaintiff notes, is his "core" audience.  (*Id.*).  The plaintiff argues that this regime is not narrowly tailored to achieve a significant government interest.  (Doc. 46 at 9-12).

The defendants justify the Second Ordinance as follows:

> The sidewalks at the northwest, southwest and southeast quadrants of intersection of Highway 98 and Highway 59 are narrower than the sidewalks along the northeast quadrant of the intersection.  One of the greatest safety concerns at that intersection is posed by large trucks who have difficulty attempting to make turns at the intersection.  However, there is a park in the northeast quadrant of the intersection of Highway 98 and Highway 59 with a larger amount of open space than the other three (3) corners.  Demonstrations on the sidewalk at that corner of the intersection are allowed because any individuals demonstrating there have a greater area or available amount of space to try to move out of the way to avoid any injury or potential danger posed by vehicular traffic making turns.

(Doc. 41-3 at 1-2).

The defendants' asserted interest, then, is speaker safety.  As the plaintiff makes no contrary argument, the Court assumes that speaker safety constitutes a "significant government interest" for purposes of constitutional analysis.  *See McCullen v. Coakley*, 134 S. Ct. 2518, 2535 (2014) ("We have … previously recognized the legitimacy of the government's interests in ensuring public safety and order ….") (internal quotes omitted); *Gold Coast Publications, Inc. v. Corrigan*, 42 F.3d 1336, 1345 (11th Cir. 1994) ("The Supreme Court has recognized aesthetics and safety as significant government interests legitimately furthered through ordinances regulating First Amendment expression in various contexts.") (applying principle to placement of newsracks on public rights-of-

way).  The Court therefore turns to whether the Second Ordinance is narrowly tailored to serve the City's asserted interest in speaker safety.

The plaintiff attacks the means the City has chosen with which to further its legitimate interest as under-inclusive.  (Doc. 46 at 9-12).  The danger, according to the defendants, is that eighteen-wheelers making turns will clip the corners and potentially strike speakers standing there.  The City's response is under-inclusive, says the plaintiff, because it does not preclude non-speakers from standing in the exact same danger zone, and it does not preclude anyone, speakers or no, from standing in the danger zone fifteen hours a day – including the hours of darkness, when they are less likely to be seen by truckers.

According to the plaintiff's own quotation, the significance of under-inclusiveness is not that it exposes a failure to narrowly tailor the restriction but that it "diminish[es] the credibility of the government's rationale for restricting speech in the first place."  *City of Ladue v. Gilleo*, 512 U.S. 43, 52 (1994).  The Court, however, cannot make credibility determinations on motion for summary judgment, and the plaintiff cannot obtain summary judgment by poking holes in the *bona fides* of the defendants' stated rationale; instead, the plaintiff must show that, even assuming the City truly enacted the Second Ordinance to protect speaker safety, the means it selected are not narrowly tailored as that term has been defined for purposes of First Amendment analysis.[5]

---

[5] The plaintiff proceeds under the misapprehension that the defendants have the burden, in response to his motion for summary judgment, to "prov[e]" by "evidence" that there is a danger to pedestrians, that the danger is greater for speakers than for non-speakers, that the danger is not adequately addressed by signs warning truckers not to attempt turns at the intersection, and that the Second Ordinance is narrowly tailored to further the City's safety interest.  (Doc. 46 at 9-12, *passim*).  The plaintiff is mistaken.  The only case on which he relies identified the burden at trial, not on motion for summary judgment.  This is the plaintiff's motion for summary judgment, so the initial burden is on him to demonstrate the absence of any genuine issue of material fact as to the Second Ordinance; until he does that, the defendants have no burden at all.  Because the Second Ordinance was passed only after the plaintiff filed the instant motion, he could not attempt this feat in his principal brief, but once the Second Ordinance superseded the First and was made the subject of the defendants' responsive brief, the

"[T]he requirement of narrow tailoring is satisfied so long as the … regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989) (internal quotes omitted). However, "[g]overnment may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Id*. "So long as the means chosen are not substantially broader than necessary to achieve the government's interest, however, the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Id*. at 800; *accord McCullen*, 134 S. Ct. at 2535. While the plaintiff uses the phrase, "narrowly tailored," he does not employ the governing analysis of that inquiry and so presents nothing for review.

The plaintiff does argue that "there is no justifiable reason for subjecting expression by small groups and individuals to a ban or permit requirement in traditional public fora." (Doc. 46 at 9). But the plaintiff has failed to tie that general statement to the Second Ordinance; in particular, he has not attempted to show that, assuming the ordinance was passed to protect speaker safety, as a matter of fact and/or law it cannot permissibly be applied to small groups of speakers or to individual speakers.

Finally, the plaintiff complains that the ten-day advance notice requirement is invalid because it "serve[s] to deter small group speech altogether." (Doc. 46 at 10). Without passing on the accuracy of this statement, the Court notes that, according to the plaintiff, the permit requirement itself "has the continued effect of banning individual and small group speech in those locations, because even if the

---

plaintiff was obligated to start over with that ordinance. This might have required additional discovery, supplemental briefing, or perhaps even a new motion for summary judgment, but all were available – the defendants' brief was filed on March 23, 2016, and the discovery and motions deadlines did not arrive until June 10 and July 1, respectively. (Doc. 26 at 1, 5). The plaintiff's failure to employ these vehicles furnishes no grounds to exempt him from the rules governing motions for summary judgment.

permit is obtained, the street is automatically closed, depriving the speaker of an audience." (*Id*. at 3).  As the plaintiff puts it, the very act of obtaining a permit "would defeat my purpose for being there in the first place." (Doc. 46-1 at 3). The Court declines to address at this juncture the validity of one aspect of the permit system when the plaintiff insists that other circumstances render it pointless for him to seek a permit in the first place.

### III. Qualified Immunity.

Defendant Miller is sued in both his official and his individual capacity. (Doc. 1 at 1, 2).  In the defendants' opposition brief, he seeks qualified immunity "as to the claims brought against him in his individual capacity." (Doc. 40 at 13). To the extent the plaintiff seeks injunctive or declaratory relief against Miller, this is not possible, since "qualified immunity is only a defense to personal liability for monetary awards" and "may not be effectively asserted as a defense to a claim for declaratory or injunctive relief." *Ratliff v. DeKalb County*, 62 F.3d 338, 340 n.4 (11th Cir. 1995); *D'Aguanno v. Gallagher*, 50 F.3d 877, 879 (11th Cir. 1995). Therefore, the defense can extend no further than the plaintiff's claim for nominal damages of $1.00. (Doc. 1 at 23; Doc. 32 at 26). Because the plaintiff does not object to the unusual timing and format of Miller's request for qualified immunity, (Doc. 46 at 12-14), the Court addresses it.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "[T]he burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority." *Harbert International v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998). The burden then shifts to the plaintiff to show that the defendant's conduct

"violated a clearly established statutory or constitutional right." *Grayden v. Rhodes*, 345 F.3d 1225, 1231 (11th Cir. 2003).

The plaintiff concedes that Miller was acting within his discretionary authority in enforcing the First Ordinance. (Doc. 46 at 12). The plaintiff argues the First Ordinance was unconstitutional for authorizing Chief Wilson to consider the potential reaction of third parties in deciding whether to approve a permit request. (Doc. 46 at 13). The defendants assume for argument that the First Ordinance was unconstitutional but say the plaintiff cannot meet his burden of showing that the ordinance's unconstitutionality was clearly established. (Doc. 40 at 12-13).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 132 S. Ct. 2093 (2012). "The salient question … is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). To attain that level, "the right allegedly violated must be established, not as a broad general proposition, … but in a particularized sense so that the contours of the right are clear to a reasonable official." *Reichle*, 132 S. Ct. at 2094. The law is clearly established if any of three situations exists.

"First, the words of the pertinent federal statute or constitutional provision in some cases will be specific enough to establish clearly the law applicable to particular conduct and circumstances to overcome qualified immunity, even in the total absence of case law." *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002) (emphasis omitted). The requisite fair and clear notice can be given without case law only "[i]n some rare cases." *Williams v. Consolidated City of Jacksonville*, 341 F.3d 1261, 1270 (11th Cir. 2003).

"Second, ... some broad statements of principle in case law are not tied to particularized facts and can clearly establish law applicable in the future to different sets of detailed facts." *Vinyard*, 311 F.3d at 1351. "For example, if some authoritative judicial decision decides a case by determining that 'X Conduct' is unconstitutional without tying that determination to a particularized set of facts, the decision on 'X Conduct' can be read as having clearly established a constitutional principle: put differently, the precise facts surrounding 'X Conduct' are immaterial to the violation." *Id*. "[I]f a broad principle in case law is to establish clearly the law applicable to a specific set of facts facing a government official, it must do so with obvious clarity to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Id*. (internal quotes omitted). "[S]uch decisions are rare," and "broad principles of law are generally insufficient to clearly establish constitutional rights." *Corey Airport Services, Inc. v. Decosta*, 587 F.3d 1280, 1287 (11th Cir. 2009).

"Third, [when] the Supreme Court or we, or the pertinent state supreme court has said that 'Y Conduct' is unconstitutional in 'Z Circumstances,'" then if "the circumstances facing a government official are not fairly distinguishable, that is, are materially similar [to those involved in the opinion], the precedent can clearly establish the applicable law." *Vinyard*, 311 F.3d at 1351-52.

When case law is utilized to show that the law was clearly established, the plaintiff must "point to law as interpreted by the Supreme Court [or] the Eleventh Circuit," and such case law must pre-date the challenged conduct. *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). Moreover, "[t[he law cannot be established by dicta[, which] is particularly unhelpful in qualified immunity cases where we seek to identify clearly established law." *Santamorena v. Georgia Military College*, 147 F.3d 1337, 1342 n.13 (11th Cir. 1998) (internal quotes omitted).

16

To meet his burden, the plaintiff relies on *Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992). The First Ordinance states that the police chief "shall issue a parade/demonstration permit when … he or she finds that … [t]he conduct of the parade/demonstration is not reasonably likely to … provoke disorderly conduct." (Doc. 7-4, § 11-99(6)). The Court has previously determined that, pursuant to this language, Chief Wilson "is free to deny a permit if he finds such a likelihood [of provoking disorderly conduct], and he may find such a likelihood based on the response of others to the proposed speech." (Doc. 24 at 4).

That situation brings *Forsyth County* into play. As noted in Part II, a restriction on speech in a traditional public forum (such as the public sidewalks here) "can be placed … only if it is content neutral." *Bloedorn*, 631 F.3d at 1231. As *Forsyth County* holds, "[l]isteners' reaction to speech is not a content-neutral basis for regulation." *Id*. at 134. In particular, the *Forsyth County* Court held that an ordinance permitting a government official to vary the fee charged for a parade or assembly permit based on the "estimated cost of maintaining public order" was unconstitutional because [t]he fee assessed will depend on the administrator's measure of the amount of hostility likely to be created by the speech based on its content." *Id*. at 124, 134

On its face, the First Ordinance authorized Chief Wilson to deny a permit based on listeners' reaction to speech, specifically, on his assessment that the proposed speech is reasonably likely to "provoke disorderly conduct." This is precisely the sort of scheme held unconstitutional in *Forsyth County*, and it does not matter, for qualified immunity purposes, that the ordinance in that case addressed "maintaining public order" while that in this case addressed "provok[ing] disorderly conduct." Both tie government approval to assessments of how non-speakers will react to the speech – indeed, the First Ordinance does so more directly than did the ordinance in *Forsyth County*. The Court agrees with the

17

plaintiff that *Forsyth County* gave fair warning that the First Ordinance was unconstitutional.[6]

Even though the Court discussed and relied upon *Forsyth County* in granting the plaintiff a preliminary injunction against enforcement of the First Ordinance on precisely the grounds related above, (Doc. 24 at 4-6), the defendants ignore it.  Instead, they suggest the Court should consider that Miller did not devise the First Ordinance but "was merely enforcing the City's ordinance requiring a permit for demonstrations." (Doc. 40 at 13).  Their only support for their proposal is *Redd v. City of Enterprise*, 140 F.3d 1378 (11th Cir. 1998), which states only that, "[w]hen an officer has arguable probable cause to believe that a person is committing a particular public offense, he is entitled to qualified immunity from suit, even if the offender may be speaking at the time that he is arrested." *Id*. at 1384.  As the plaintiff points out, however, the plaintiffs in *Redd* "d[id] not attack the disorderly conduct statute as unconstitutional." *Id*. at 1383.  *Redd* does not remotely support the proposition that the mere existence of probable cause (or arguable probable cause) to arrest for a speech-related violation cloaks an officer with qualified immunity for enforcing a blatantly unconstitutional restriction on speech.

## CONCLUSION

For the reasons set forth above, the plaintiff's motion for summary judgment is **denied**,[7] and Miller's request for summary judgment as to the claim

---

[6] The plaintiff argues that the First Ordinance also was unconstitutional because it was not narrowly tailored and because it failed to leave open ample alternative channels of communication. (Doc. 46 at 14).  Because the plaintiff cites no Eleventh Circuit or Supreme Court cases clearly establishing that the First Ordinance was unconstitutional in these respects, he cannot resist qualified immunity on these bases.

[7] The defendants would be well advised not to take undue comfort from today's ruling, as the Second Ordinance appears problematic on multiple fronts.

for nominal damages brought against him in his individual capacity, construed as a motion for such relief, is likewise **denied**.

DONE and ORDERED this 26th day of July, 2016.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE